*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARILYN WILLIAMS,

        Plaintiff-Appellant,

and

MERCYLAND HEALTH SERVICES and
GREATER LAKES AMBULATORY SURGERY
CENTER,

        Intervening Plaintiffs,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee.

FOR PUBLICATION
January 28, 2021
9:25 a.m.

No. 349903
Wayne Circuit Court
LC No. 17-015281-NF

Before: GLEICHER, P.J., AND K. F. KELLY AND SHAPIRO, JJ.

SHAPIRO, J.

Plaintiff Marilyn Williams appeals the trial court's order granting summary disposition in favor of defendant Farm Bureau Mutual Insurance Company of Michigan under MCR 2.116(C)(10), on the basis that plaintiff made a false or fraudulent statement related to her claim for no-fault benefits in violation of an antifraud provision in its policy. In light of the Supreme Court's recent decision in *Meemic Ins Co v Fortson*, ___ Mich ___; ___ NW2d ___ (2020) (Docket No. 158302), we reverse.

## I. BACKGROUND

Plaintiff was injured in an automobile collision on September 1, 2016. She filed a claim for personal protection insurance (PIP) benefits with defendant, her no-fault insurer. Defendant denied the claim and plaintiff filed suit on October 20, 2017.

Defendant moved for summary disposition on the ground that plaintiff's policy, including her PIP coverage, was void because she had violated an antifraud provision in the policy by making

false statements to defendant after her auto accident regarding her employment, the extent of her injuries and her need for assistance. Because the issue presented is purely legal, we need not recapitulate the details of the alleged fraud. The provision relied on by defendant provided that the policy would be void if a claimant made a material misrepresentation either in procuring the policy or in the course of postprocurement claims. The relevant provision in the policy reads:

> The entire policy will be void if whether before or after a loss, you, any family member, or any insured under this policy has:
>
> 1. Intentionally concealed or misrepresented any material fact or circumstances;
> 2. engaged in fraudulent conduct; or
> 3. made false statements;
>
> relating to this insurance or to a loss to which this insurance applies.

Significantly, defendant does not claim that plaintiff committed fraud in the inducement, i.e., plaintiff did not make any material misrepresentations when applying for and purchasing defendant's no-fault policy. Nor does defendant claim in its motion that the evidence concerning the accident, injury and treatment, seen in the light most favorable to plaintiff, would be insufficient to qualify for PIP benefits. Defendant sought dismissal solely on the allegations of postprocurement fraud. The trial court granted the motion and this appeal followed.

## II. ANALYSIS

### A.

In *Meemic*, ___ Mich ___, the Michigan Supreme Court considered whether a no-fault insurer may rely on a contractual antifraud provision to deny a claim or void or rescind a policy when the benefits in question are those mandated by statute, such as PIP benefits, as opposed to optional coverages such as uninsured motorist coverage. The Court concluded that as to benefits mandated by the no-fault act, MCL 500.3101 *et seq*., a no-fault policy may not provide for defenses to coverage other than those in the no-fault act or that existed in common law and were not abrogated by the act. The Court unambiguously concluded that antifraud provisions are invalid to the degree they purport to apply to misrepresentations or fraud that occur after the policy has been issued (postprocurement fraud) but upheld such provisions as long as they are limited to fraud in the inducement (preprocurement fraud). In the opinion's concise opening paragraph, the Court explained the legal problem and resolved it:

> Meemic Insurance Company seeks to void its policy with defendants Louise and Richard Fortson and stop paying no-fault benefits to their son. Although the benefits are mandated by statute, Meemic seeks to avoid its statutory obligations by enforcing the antifraud provision in the policy. The issue before the Court is the extent to which a contractual defense like the one here is valid and enforceable when applied to coverage mandated by the no-fault act, MCL 500.3101 *et seq*. We hold that such contractual provisions are valid when based on a defense to mandatory coverage provided in the no-fault act itself or on a common-law defense

2

that has not been abrogated by the act. *Because Meemic's fraud defense is grounded on neither the no-fault act nor the common law, it is invalid and unenforceable.* [*Id*. at ___; slip op at 1-2 (emphasis added).]

In determining that the antifraud provision did not have a basis in the common law, the Court distinguished postprocurement fraud from fraud in the inducement:

[T]he fraudulent activity at issue here did not relate to the inception of the contract. The fraudulent attendant-care bills . . . neither induced Meemic to enter into the policy nor deceived Meemic as to the contents of the policy. Meemic could not possibly have relied on any fraudulent misrepresentations when it agreed to insure the Fortsons in 2009 because, at the time, they had not yet made any of the alleged misrepresentations. . . . *In short, Meemic's contract-based fraud defense fails because it is not the type of common-law fraud that would allow for rescission*. [*Id*. at ___; slip op at 17-18 (emphasis added).]

The Court forcefully reiterated its view that a no-fault policy may provide for nonstatutory policy-based exclusions and defenses only as to optional coverages, not mandatory ones such as PIP benefits: "[O]ne thing that is not open to debate is that the [no-fault] act governs the coverages it mandates, and the insurance policy controls coverages that are optional (i.e., not required by the act)[.]" *Id*. at ___; slip op at 6. The Legislature did not include postprocurement misrepresentations among the grounds in MCL 500.3113 on which a court may conclude that the claimant is not entitled to PIP benefits, though it could readily have been included.[1]

It is clear that the text of the no-fault act does not authorize insurers to void or rescind a no-fault policy on the basis of fraud or misrepresentation. Because fraud is not a statutory defense, the sole remaining question is whether that defense existed at common law and survived the adoption of a no-fault system. *Meemic* concluded that under common law, fraud constituted grounds to void a contract only as to preprocurement fraud:

[W]e must consider whether Meemic's fraud defense is available at common law. As we explained in [*Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012)], "Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of

---

[1] The grounds set forth in MCL 500.3113 are the knowing use of an unlawfully taken vehicle, MCL 500.3113(a), a failure to carry the security required by MCL 500.3101 or 500.3103 on the vehicle involved in the accident, MCL 500.3113(b), or when a claimant is an out-of-state occupant of a vehicle not registered in Michigan that was not insured by an insurer that has filed a certification in compliance with MCL 500.3163, see MCL 500.3113(c). And notably, in MCL 500.3173a(4) the Legislature has demonstrated that it knows how to adopt legislation making postprocurement fraud grounds for denial of a claim. That statute provides that, as to claims filed with the Michigan automobile insurance placement facility, provision of material false information renders the claimant ineligible for benefits and classifies such an act as a fraudulent insurance act under MCL 500.4503.

3

fraud or misrepresentation." The key phrase is "if a contract is *obtained* as a result of fraud or misrepresentation." *Id.* [*Id*. at ___; slip op at 13.]

The Court continued, "At common law, the defrauded party could only seek rescission, or avoidance of the transaction, if the fraud related to the inducement to or inception of the contract." *Id*. at ___; slip op at 13-14 (emphasis in original). Thus, where the fraud alleged was not in "the inducement to or inception of the contract," there is no common-law basis to rescind or avoid performance.

*Meemic* also explained that applying such antifraud provisions to mandatory coverage undermines the entire no-fault system. It stated that "[t]o allow such provisions would reduce the scope of the mandatory coverage required by the no-fault act, as supplemented by the common law. *It would in short, vitiate the act*." *Id*. at ___; slip op at 10 (emphasis added). And were there any doubt as to the import of its decision, the Court recapped its holding at the end of the opinion: "[W]e hold that [the] *contractual antifraud provision is invalid and unenforceable* because it is not based on a statutory or unabrogated common-law defense." *Id*. at ___; slip op at 24 (emphasis added).

In the instant case, the allegedly fraudulent statements were made postprocurement and did not influence or induce the policy's procurement. The rule of law clearly set forth in *Meemic* requires that we reverse the trial court.

B.

Whether postprocurement fraud could void a PIP policy has only became significant since this Court's decision in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014), which applied an antifraud provision to postprocurement fraud in a PIP case. Prior to *Bahri*, no case of record had ever held that false statements by a Michigan no-fault insured—other than those relevant to fraud in the inducement—were grounds to void or rescind a policy. Since *Bahri*, claims of fraud asserted by no-fault insurers against their insureds have become commonplace.

*Bahri* did not provide extensive analysis in support of its holding. Rather, it relied exclusively on *Mina v Gen Star Indemnity Co*, 218 Mich App 678, 686; 555 NW2d 1 (1996) rev'd in part on other grounds 455 Mich 866; 568 NW2d 80 (1997), a fire insurance case governed by a wholly different statute, MCL 500.2833. That statute not only permits insurers to incorporate antifraud provisions in their policies, its plain text *requires* fire insurance policies to include a provision "[t]hat the policy may be void on the basis of misrepresentation, fraud, or concealment." MCL 500.2833(1)(c). Such a clause in a fire insurance policy is entirely consistent with the controlling statute. However, *Mina* provides no support for the notion that such a clause is consistent with the no-fault act, which does not contain such language. And *Bahri* neglected to examine or explain why no-fault insurance policies should be governed by a fire insurance statute containing critical language missing from the no-fault act. Indeed, the inclusion of a fraud remedy in MCL 500.2833 reflects the Legislature's awareness that such provisions are warranted in certain circumstances, and strongly suggests that the Legislature deliberately adopted a different approach

4

when it enacted the no-fault act.[2]  In sum, by concluding that a single misrepresentation in the course of a PIP claim was ground to deny all benefits and void the contract on summary disposition, *Bahri* announced a rule of law unrooted in precedent or statutory authority.

Further, *Bahri* never considered whether the antifraud provision it upheld was consistent with the no-fault act insofar as it was applied to fraud other than fraud in the inducement—it merely assumed that to be the case despite the absence of supporting caselaw.  And the no-fault act does provide other grounds for denial of benefits.  For example, *Meemic* points out that "MCL 500.3113 lists several of . . . these circumstances, including, for example, when a person willingly operates an unlawfully taken vehicle or operates a vehicle as to which he or she was an excluded operator. *The no-fault act, however, does not provide a fraud defense to PIP coverage.*"[3]  *Id*. at ___; slip op at 12 (emphasis added).

Contrary to defendant's suggestion, limiting no-fault antifraud provisions to fraud in the inducement—as required by *Meemic*—will not leave no-fault insurers without recourse in the event of a fraudulent claim.  An insurer maintains the power to deny claims or parts of claims it believes fraudulent.  The plaintiff then bears the burden of filing suit and ultimately proving that she was injured in an auto accident and that the injury resulted in reasonable and necessary medical care and other covered expenses.

Furthermore, the Legislature provided a specific remedy for postprocurement fraud in the no-fault act itself.  MCL 500.3148(2) permits an insurer to recoup attorney fees "in defending against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation."  The fact that the no-fault act provides a specific mechanism for relief in the context of a fraudulent claim further supports that materially different remedies created by the insurance policy are not valid.  "It is a general rule of law in Michigan that when a statute creates a new right or imposes a new duty having no counterpart in the common law the remedies provided in the statute for violation are exclusive and not cumulative." *Ohlsen v DST Indus, Inc*, 111 Mich App 580, 583; 314 NW2d 699 (1981), citing *Pompey v General Motors Corp*, 385 Mich 537; 189 NW2d 243 (1971).

## C.

*Meemic* did not consider the legal underpinnings of *Bahri* or the many cases that have followed it.  The Supreme Court mentioned *Bahri* only in a footnote and declined to determine

---

[2] The only other case cited in *Bahri* was *TBCI PC v State Farm Mut Auto Ins Co*, 289 Mich App 39; 795 NW2d 229 (2010).  But that case did not address whether or not antifraud provisions were permissible in no-fault policies.  The question in *TCBI* was whether a prior jury's finding of fraud by the claimant constituted res judicata as to the claimant's medical provider when it filed their own suit for reimbursement.  *Id*. at 40-44.  The jury's finding in the prior case that the claimant had committed fraud and so was not entitled to coverage was not appealed, and so the validity of the antifraud provision was never considered by this Court.

[3] As noted in fn 1, this does not apply if the claim is made to the Michigan automobile insurance placement facility.  MCL 500.3173a(2).

whether and to what extent that case survived its holding. The footnote does contain a suggestion that the Court might view *Bahri*'s reach differently when the claimant is the named insured:

> The Court of Appeals has upheld a fraud-exclusion provision when the fraud related to proof of loss on a claim rather than fraud in the procurement or execution of the policy. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425; 864 NW2d 609 (2014); but see *Shelton* [*v Auto-Owners Ins Co*], 318 Mich App 648, 652-655; 899 NW2d 744 (2017) (limiting *Bahri* to when the claimant is an insured under the defendant's policy). A leading treatise has explained that "to avoid a policy on the ground of fraud or false swearing in the proof of loss, the statement in question must be material." 13A Couch, Insurance, 3d (2019 rev ed), § 197:18, pp 48-49. In this case, however, because there is no allegation of fraud in relation to Justin's claim for benefits, the Court need not address the issue of whether and to what extent fraud related to proof of loss can justify voiding the policy. Moreover, because this case involves fraud by someone other than the claim beneficiary, the Court need not address whether a clause voiding a policy for postprocurement fraud would be valid as applied to fraud by an individual who is *both* a policyholder and the claim beneficiary. [*Meemic*, ___ Mich at ___; slip op at 16 n 15.]

Despite this hint that *Bahri* might survive in some form if the claimant was also the policy holder, the Court resoundingly rejected such an approach later in the opinion by explaining that the claimant's relation to the policy did not alter its conclusion that the antifraud provision was inconsistent with the no-fault act:

> [T]he correct framework for deciding this case has nothing to do with the now-abrogated innocent third-party doctrine. . . . The dispositive question in this case turns upon the nature of the common-law fraud defense—specifically, that it must relate to the contract's inception—which is irrelevant to [the claimant's] status as a third party. [*Id.* at ___; slip op at 18 n 17.]

Thus, *Meemic* did not turn on the fact that the claimant was not a party to the contract, but on the holding that antifraud provisions may not be applied to PIP claims, other than fraud in the inducement.

By addressing *Bahri* only tangentially and declining to adopt its holding, the *Meemic* Court left it to our Court to sort out what now remains of *Bahri*.[4] We conclude that *Bahri* remains good

---

[4] Our dissenting colleague concludes that *Meemic* "expressly exempted this scenario from its holding," because plaintiff is both the policyholder and the claim beneficiary. We agree. But the task before us is to answer the legal question expressly left open by the Court, i.e., whether, given *Meemic*'s holding and reasoning, "a clause voiding a policy for postprocurement fraud would be valid as applied to fraud by an individual who is *both* a policyholder and the claim beneficiary." *Meemic*, ___ Mich at ___; slip op at 16 n 15. The dissent fails to offer any explanation how *Bahri* remains viable as applied to postprocurement fraud in light of *Meemic*.

law only to the extent that it is consistent with the no-fault act and common law as explained in *Meemic*. In other words, it applies only in cases of fraud in the inducement.[5]

Our dissenting colleague focuses much of her argument on the evidence of statements made by plaintiff that appear to be false. We agree that given the evidence before us, plaintiff likely testified falsely at one or both depositions. Sorting out the truth is a jury function, however. And here, the task is complicated by the fact that determining whether plaintiff was truthful may hinge on an assessment of the credibility of others, including her friend for whom she testified in a separate case. Moreover, this case does not involve a single claim for benefits, but many such claims. Sorting out whether plaintiff testified falsely about her eligibility for replacement care benefits, for example, does not tell us whether she was entitled to recover medical benefits for reasonable and necessary medical care. Assessing truth and weighing evidence are not within a judge's purview under MCR 2.116(C)(10). *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 346; 941 NW2d 685 (2019).

We agree with the dissent that plaintiff's statements are fodder for impeachment and some are likely admissible as substantive evidence. The question in this case is not *whether* plaintiff committed postprocurement fraud—that is an inherently fact and credibility-driven analysis. The question is whether the fraud provision in defendant's policy is enforceable as to postprocurement fraud so as to enable a court to sustain a preemptive denial of all coverage, even where some or all of claim is meritorious. A fact-finder is free, and has always been free, to conclude that some or all of plaintiff's claimed benefits were properly denied by defendant. And the trial court is free to conclude that the claim "was in some respect fraudulent or so excessive as to have no reasonable foundation," in which case it may award the insurer its attorney fees. MCL 500.3148(2). But the no-fault act makes clear that those determinations must take place at the end of a trial, not before one has begun.

## III. CONCLUSION

*Meemic* held that antifraud provisions in no-fault policies apply to fraud in the inducement but not to allegations of postprocurement fraud. Accordingly, the policy provision on which defendant and the trial court relied is "invalid and unenforceable" to the degree a no-fault insurer seeks to apply it to allegations of postprocurement fraud in a claim under a mandatory coverage, as in this case. *Meemic*, ___ Mich at ___; slip op at 24. The order of summary disposition is

---

[5] *Meemic* also allowed that a fraud exclusion may be "valid as applied to a party's failure to perform a substantial part of the contract or one of its essential terms." *Meemic*, ___ Mich at ___; slip op at 16. Here, however, as *Meemic* demonstrates, there is no basis to conclude that a PIP policy's fraud provision is an essential term as the contract would be binding and fully consistent with the no-fault act without the provision. The terms that are essential to a PIP policy are those defined in the Act. "As a general rule, Michigan's no-fault insurance system is a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 396; 919 NW2d 20 (2018) (quotation marks and citations omitted).

reversed and the case is remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher